United States District Court
Southern District of Texas

**ENTERED**

August 29, 2016

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | BANKR. CASE NO. 13-37713 |
| Gregory D. Hawk, et al., | § | CHAPTER 7 |
| | § | |
| Debtor | § | |

---------------------------------------------------------------

| | | |
|---|---|---|
| Gregory D. Hawk, | § | |
| | § | |
| Appellant/Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-15-914 |
| | § | |
| Eva S. Engelhart, Chapter 7 | § | |
| Trustee, | § | |
| | § | |
| | § | |
| Appellee/Defendant. | § | |

## OPINION AND ORDER

The above referenced appeal seeks reversal of a Final Judgment by Chief Bankruptcy Judge Jeff Bohm,[1] in a case addressing an issue of first impression, requiring Appellant Gregory D. Hawk ("Hawk") to pay Chapter 7 Trustee Eva S. Engelhart ("the Trustee") $129,895.76 because he withdrew exempt retirement funds after no party in interest timely objected to his claimed exemption,[2] but

-------

[1] Copies of the Final Judgment are found at #2-17 and as an attachment to Appellant's Brief, #4. Judge Bohm's findings of fact and conclusions of law underlying this final judgment, which the Court is reviewing on this appeal, are available at *In re Hawk*, 524 B.R. 706 (S.D. Tex. 2015).

[2] Under Federal Rule of Bankruptcy Procedure 4003, where there is no timely objection from a creditor, a debtor's claimed exemptions are approved as a matter of law on the later of (1) the 30th day following the conclusion of the creditors' meeting or (2) the 30th day following an amendment to the debtor's claimed exemptions.

before the bankruptcy case was closed.  The legal issue before Judge Bohm, and now before this Court, is does the Fifth Circuit's recent holding in *Viefelahn v. Frost (In re Frost)*, 744 F.3d 384 (5th Cir. 2014), a Chapter 13 case which dealt with homestead exemptions under Texas Property Code § 41.001(c),[3] requiring property owners who sell their exempt homestead to reinvest the proceeds in another homestead within six months, by analogy require debtors withdrawing funds from their exempt Individual Retirement Accounts ("IRAs") to roll over those funds into another exempt IRA account within sixty days under Texas Property Code 42.0021(c),[4] in order to retain their exemption from the bankruptcy estate and creditors?

### Standard of Review

This Court reviews the bankruptcy court's conclusions of law de novo and its findings of fact for clear error.  *In re Coppola*, 419 F.3d 323, 326 (5th Cir. 2005).  Whether an exemption from the

---

[3] Under Texas law, while a debtor's homestead is permanently exempted from the bankruptcy estate, the funds obtained from selling the homestead are exempted for only six months.  *Frost*, 744 F.3d at 385.  *See* Texas Prop. Code § 41.001(c)("The homestead claimant's proceeds of a sale of a homestead are not subject to seizure for a creditor's claim for six months after the date of sale.").  Section 41.001(c) is sometimes referred to as the "Texas Proceeds Rule."

[4] Section 42.0021(c) states, "Amounts distributed from a plan, annuity, account, or contract entitled to an exemption under Subsection (a) are not subject to seizure for a creditor's claim for 60 days after the date of distribution if the amounts qualify as a nontaxable rollover contribution under Subsection (b)."

bankruptcy estate exists is a question of law for the Court.[5] *Zibman v. Tow (In re Zibman)* 268 F.3d 298, 301 (5th Cir. 2001), *citing In re England*, 975 F.2d 1168, 1172 (5th Cir. 1992).  The Court therefore reviews the appeal *de novo*.  Because the facts here are uncontested and the issue is a question of law, the Court finds that an oral hearing is not necessary.

## Applicable Law

When a debtor files a petition for bankruptcy, a bankruptcy estate is created comprised of all legal and equitable interests the debtor has in property.  *Zibman*, 268 F.3d at 301.  Under 11 U.S.C. § 522(b),[6] the debtor may then remove some of the property

---

[5] This Court has jurisdiction over this appeal under 28 U.S.C. § 158(a) because a bankruptcy court's order that denies an exemption is a "final order."  *Zibman v. Tow (In re Zibman)*, 268 F.3d 298, 301 (5th Cir. 2001).

[6] Section 522(b)states in relevant part,

(1) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (2) or, in the alternative, paragraph (3) of this subsection. . . .

(2) Property listed in this paragraph is property that is specified under subsection (d), unless the State law that is applicable to the debtor under paragraph (3)(A) specifically does not so authorize.

(3) Property listed in this paragraph is--

(A) subject to subsections (o) and (p), any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition to the place in which the

from the bankruptcy estate by electing to exempt it under either federal law, with subject property identified in 11 U.S.C. § 522(d), or under state law, identified in § 522(b)(2). *In re Camp*, 631 F.3d 757, 759 (5th Cir. 2011; *In re Jarboe*, 365 B.R. 717, 720 (S.D. Tex. 2007). Each state can chose to opt out of the federal exemption scheme, and if the debtor's state does so, the debtor is limited to the state's exemptions. *Id.* at 760. The majority of states have opted out of the federal bankruptcy substantive exemption provision. Robert E. Ginsberg, Robert D. Martin and Susan V. Kelley, *Ginsberg & Martin on Bankruptcy § 6.01*

---

debtor's domicile has been located for the 730 days immediately preceding the date of the filing of the petition or if the debtor's domicile has not been located in a single State for such 730-day period, the place in which the domicile was located for 180 days immediately preceding the 730-day period or for a longer portion of such 180-day.

(B) Any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant to the extent that such interest as a tenant by the entirety or joint tenant is exempt from process under applicable nonbankruptcy law; and

(C) retirement funds to the extent that those funds are in a fund or account that is exempt from taxation under section 401, 403, 408, 408A, 414, 457, or 501(a) of the Internal Revenue Code of 1986.

If the effect of the domiciliary requirement under subparagraph (A) is to render the debtor ineligible for any exemption, the debtor may elect to exempt property that is specified under subsection (C).

-4-

(Substantive Exemption Rights)(Aspen Publishers 2016)(listing states that have opted out). Texas has not opted out of the federal bankruptcy exceptions nor enacted any law to prevent its debtors from choosing between state exemptions or federal exemptions of § 522(d), so Texas debtors may choose either federal exemptions specified in § 522(d) or, if qualified, state exemptions in § 522(b)(2). *NCNB v. Volpe (In re Volpe)*, 120 B.R. 843, 845, 846 (W.D. Tex. 1990), *aff'd*, 943 F2d 1451 (5th Cir. 1991); *In re Kang*, 243 B.R. 666, 668 (N.D. Tex. 1999).

"Anything properly exempted passes through bankruptcy; the rest goes to the creditors." *Payne v. Wood*, 775 F.2d 202, 204 (7th Cir. 1985). The debtor claiming an exemption must file "a list or property that the debtor claims as exempt," and "[u]nless a party in interest objects, the property claimed as exempt on such list is exempt." *Id., quoting* 11 U.S.C. 522(l).

Here Hawk elected exemption of his IRA accounts[7] under Texas Property Code Ann. § 42.0021.[8] Therefore Hawk bears the burden of

---

[7] Generally federal and state statutes recognize an exemption for an IRA that is provided for under 26 U.S.C. § 408 (governing the creation, operation, and taxability of IRAs).

[8] Section 42.0021(a) of the Texas Property Code provides in relevant part, "In addition to the exemption prescribed by Section 42.001, a person's right to the assets held in or to receive payments, whether vested or not, under . . . an individual retirement account or individual retirement annuity . . . is exempt from attachment, execution, and seizure for the satisfaction of debts to the extent that the . . . account is exempt from federal income tax or to the extent federal income tax on the person's interest is deferred until actual payment of

-5-

proving that he is entitled to the exemption. *In re Jarboe*, 365 B.R. at 721, *citing Lozano v. Lozano*, 975 S.W. 2d 63, 67 (Tex. App.--Houston [14th Dist.] 1998, pet. denied). Texas liberally construes its exemption statutes in favor of the debtor claiming the exemption. *Id., citing In the Matter of Walden*, 12 F.3d 445, 448 (5th Cir. 1994), *citing Hickman v. Hickman*, 149 Tex. 439, 234 S.W. 2d 410, 413-14 (1950).

## Facts

The facts are not in dispute here. Hawk and his wife, Marcie H. Hawk, filed a voluntary petition under Chapter 7 of the Bankruptcy Code on December 15, 2013 and disclosed in their Schedules two IRA accounts, one with USAA Federal Savings Bank and the other managed by NFP Securities, Inc., with a balance of $164,902 at the time of the filing of the petition, for which they claimed exemption from the bankruptcy estate under Texas Property Code Ann. § 42.0021(a). The period to object to the Debtors' discharge expired on March 17, 2014,[9] but that deadline was

_____

benefits to the person . . . ."

[9] Under Rule 4003 (a) "A debtor shall list the property claimed as exempt under § 522 of the Code on the schedule of assets required to be filed by Rule 1007." Under Rule 4003(b)(1) a party in interest may file an objection to the list of property claimed as exempt within 30 days after the meeting of creditors held under § 341(a) is concluded or within 30 days after any amendment to the list or supplemental schedule is filed, whichever is later. The court may, for cause, extend the time for filing objections if, before the time to object expires, a party in interest files a request for an extension." Rule 4003 (c) provides, "In any hearing under this rule, the objecting

extended by agreement between the U.S. Trustee and creditor Res-TX One, LLC ("Res-TX One") to May 17, 2014.

After several extensions, the meeting of the creditors took place on March 28, 2014, so under Bankruptcy Rule 4003(b)(1),[10] the deadline to object to the Hawks' claimed exemption was April 28, 2014.

On April 3, 2014 the Trustee filed a report stating that this was a "no asset" case[11] and proposed abandonment of all assets not claimed as exempt.

On May 16, 2014 Res-TX One filed an Adversary Proceeding, No. 14-3191, objecting to the discharge of the Debtors.

_____

party has the burden of proving that the exemptions are not properly claimed.  After hearing on notice, the court shall determine the issues presented by the objections."
    Bankruptcy Rule 4004(a) states in relevant part, "In a chapter 7 case, a complaint, or a motion under § 727(a)(8) of the Code, objecting to the debtor's discharge[,] shall be filed no later than 60 days after the first date set for the meeting of creditors under § 341(a)."

[10] The purpose of Rule 4003 and 11 U.S.C. § 522(l)("The debtor shall file a list or property that the debtor claims as exempt under subsection (b) of this section.") "is to protect the rights of a debtor by requiring a prompt determination of the right to exemptions," . . . "so all parties may then freely pursue their rights with regard to the exempt property," and to establish "a notice procedure to alert the debtors that the property claimed as exempt cannot be so treated until the controversy surrounding its status is resolved." *In re Starns*, 52 B.R. 405, 410 (S.D. Tex. 1985), *citing In re Allen*, 44 B.R. 38, 40 (Bankr. D.N.M. 1984), and *In re Earnest*, 42 B.R. 395, 401 (Bankr. D. Ore. 1984).

[11] A no-asset case is one where there are no assets other than exempt assets.  *In re Dye*, 108 B.R. 135, 136 (W.D. Tex. 1989).

Meanwhile from December 11, 2013-July 14, 2014, Debtors withdrew all of the funds in the NFP IRA account (the "Liquidated Funds"), but did not reinvest or "roll over" any of them into a new exempt IRA account, instead dipping into them to pay for their regular living expenses. On November 18, 2014 counsel for Res-TX deposed Hawk, who testified that approximately $30,000 of the Liquidated Funds remained in his possession, stored "in a shoebox." The Trustee learned of these Liquidated Funds initially from this deposition and made a demand that Debtors turn them over to the Trustee, but Debtors refused. The Trustee then filed an expedited motion seeking a turnover order under 11 U.S.C. § 542(a) compelling the Debtors to turn over the Liquidated Funds from the post-petition liquidation of their IRA account. An evidentiary hearing was held on January 5, 2015.

Relying on *Frost* and on Judge Bohm's earlier ruling in *In re Smith*, 514 B.R. 838 (Bankr. S.D. Tex. 2014), the Trustee argued that the Liquidated Funds automatically reverted to the bankruptcy estate because the Debtors failed to reinvest them in another exempt IRA account within sixty days, as mandated by Texas Property Code § 42.0021. The Trustee analogized the situation here to that in *Frost,* in which a debtor who sold his exempt homestead while his Chapter 13 bankruptcy proceeding was still pending, but failed to reinvest the proceeds in another exempt homestead within six months as required under Texas Property Code § 41.001. Therefore the

-8-

proceeds became non-exempt property, reverted to the bankruptcy estate, and lost their protection under state law. *Frost*, 744 F.3d at 385. The Fifth Circuit emphasized in *Frost* that when the Debtor elects the state law exemption, "'it is the *entire* state law applicable on the filing date that it determinative.'" *Id.* at 386, *quoting Zibman*, 268 F.2d at 304. The panel then pointed out that while federal law permanently exempts the homestead from the bankruptcy estate, in contrast Texas Property Code § 41.001(c) exempts proceeds from a sale of a homestead for only six months after the sale. *Id.* at 386-87. Thus "'a change in the character of the property that eliminates an element required for the exemption voids the exemption, even if the bankruptcy proceedings have already begun.'[12]" *Hawk*, 524 B.R. at 711-12, *citing Frost*, 744 F.3d at 388. Moreover, Judge Bohm further noted regarding *Frost,* that construing federal bankruptcy law to permanently exempt the proceeds would be contrary to Texas Law and Fifth Circuit precedent since "'the object of the proceeds exemption statute was *solely* to allow the claimant to invest the proceeds in another homestead, not to protect the proceeds, in and of themselves . . . .'" *Id.* at 712, *citing id.* at 388 (emphasis in the original). Judeg Bohm observed that the *Frost* Bankruptcy Court accordingly ordered that

---

[12] The Fifth Circuit in *Frost* continued, "Under this court's precedent, (i) the sale of the homestead voided the homestead exemption and (ii) the failure to reinvest the proceeds within six months voided the proceeds exemption, regardless of whether the sale occurred pre- or post-petition." *Id.* at 388.

the proceeds be distributed in part to Frost's creditors, with the small remainder not needed to pay his debts to be held in trust for Frost's later use.   Subsequently in *Smith*, 514 B.R. at 852, Judge Bohm applied the reasoning in *Frost*,[13] to homesteads that were sold in Chapter 7 proceedings.[14]

Because of Res-TX's objection in its pending Adversary Proceeding, which was tried but then taken under advisement, the bankruptcy case remains open, and the Debtors have not been granted a discharge.

In the instant case, the Trustee argued that the reasoning of the six-month reinvestment requirement for exemption for the proceeds from the sale of a homestead should apply by analogy to the sixty-day requirement for reinvestment of withdrawn IRA funds

---

[13] Property of the estate is defined more broadly under Chapter 13 than under Chapter 7:   under 11 U.S.C. § 1306(a), the property of the bankruptcy estate under Chapter 13 includes, in addition to property designated under 11 U.S.C. § 541, "property that the debtor acquires after the commencement of the case, but before the case is closed, dismissed, or converted to a case under chapter 7, 11 or 12 . . . ."   Chapter 13 does not distinguish between income from exempt versus non-exempt assets even if the funds are received from exempt sources.   Proceeds from the sale of a homestead after the filing of the bankruptcy petition of a Chapter 13 debtor that were not timely reinvested in another homestead, so that the exemption expired under Texas Property Code § 41.001, go into the bankruptcy estate and are subject to distribution to the creditors of the estate even though the proceeds were income from an exempt asset.   *Garcia v. Bassel*, 507 B.R. 907, 913-14 (N.D. Tex. 2014).

[14] Judge Bohm noted that the Texas homestead proceeds exemption law was enacted not only to prevent homelessness, but also to provide for collection of debts.   *Smith*, 514 B.R. at 842.

-10-

under Texas Property Code § 42.0021(c).  Therefore the result of
Hawk's failure to reinvest timely the funds he withdrew from his
IRA is that they were no longer exempt from the bankruptcy estate
and the Trustee was entitled to them to distribute to creditors.

In response Debtors contended that the Liquidated Funds are
not part of the bankruptcy estate because they were withdrawn after
the deadline for objections to exemptions, after the deadline for
objections to discharge, and after the filing of the Trustee's
report declaring no assets for distribution and proposing that the
non-exempt assets be abandoned.  The Hawks argued that the funds
should be permanently exempted, fixed in character as they appear
on the date of the bankruptcy filing.

After the evidentiary hearing on the Trustee's request for a
turnover order on January 5, 2015, the Trustee abandoned her effort
to have the proceeds from the USAA Savings Bank IRA because the
evidence showed that the funds withdrawn from it were rolled over
into another exempt account.

Judge Bohm then made oral findings of fact and conclusions of
law regarding the funds withdrawn from the NFP Securities IRA and
subsequently entered the written opinion now found at 524 B.R. 706,
discussed herein.  Judge Bohm entered a Final Judgment on February
12, 2015 (#2-17 or attachment to #4).  Hawk moved for
reconsideration, but Judge Bohm denied the motion on March 24,
2015.  Judge Bohm issued findings of fact, in accord with those in

-11-

the Court's summary above, and conclusions of law, which are the
focus of this appeal.

Disagreeing with Debtors, Judge Bohm determined that *Frost* and
*Smith* are not only applicable, but "directly on point" to the
dispute here, regarding whether the property, which is exempt under
Texas state law, loses its statutory protection at any time during
the pendency of a Chapter 7 case while the bankruptcy case is still
open.  He concluded that in this case because the Liquidated Funds
were not reinvested within 60 days of being withdrawn, the
Liquidated Funds became non-exempt and thus became property of the
bankruptcy estate which the Trustee was immediately entitled to
distribute to creditors.

### Appellant's Brief (#4)

Hawk argues that because no objections were made to his "time-
limited" exemption for proceeds from the liquidation of an IRA
account within thirty days after the creditors' meeting, his
exemptions were allowed and the exempt property vested with him as
the Debtor, placing it forever beyond the reach of the trustee or
the pre-petition creditors.  Therefore the Bankruptcy Court erred
in entering the Final Judgment (#2-17 or copy attached to #4).
Hawk contends that the snapshot rule (which states that a debtor's
allowed exemptions are based upon the applicable law in effect on
the petition date and that events that happen post-petition have no
impact on the exemptions), as applied by *Frost,* was improperly

-12-

applied by Judge Bohm to Hawk's case.  Observing that to maintain
the homestead exemption beyond the six-month period from the sale
of a homestead under Texas Property Code § 41.001(c), the debtor
must reinvest the proceeds into a new homestead before it expires,
Hawk insists that the snapshot rule is modified when an exemption
expires after a set period of time if no action is taken by the
debtor.  *Frost,* which addressed a post-petition sale of a
homestead, relied on *Zibman*, 268 F.3d 298, which involved a pre-
petition sale of a homestead on November 17, 1998, followed by a
Chapter 7 bankruptcy petition filed on February 9, 1999 within the
six-month period that the proceeds were exempt under the Texas
Property Code.  The Fifth Circuit decided that Texas law never
contemplated an exemption in the homestead's sale proceeds that
exceeded six months and held that the Zibmans' proceeds, which were
not reinvested into a new homestead, reverted to the bankruptcy
estate after the six-month period expired on March 17, 1999.  268
F.3d at 304-05.  In essence, argues Hawk, the time-limited
exemption in the proceeds is not frozen in time simply because of
the filing of a bankruptcy petition, i.e., a debtor in bankruptcy
should not be able to gain greater rights with respect to property
exemptions than a nondebtor who never sought bankruptcy protection.
This reasoning explains the Fifth Circuit's holdings in *Frost* and
*Zibman,* which focus on the rule that debtors' exemptions are based
on the whole elected state law applicable on the petition date that

-13-

determines a debtor's property exemptions. *Frost*, 744 F.3d at 386; *Zibman*, 268 F.3d at 304.   In contrast, in the instant case, argues Hawk, Judge Bohm erroneously extended the snapshot rule in a way that incorrectly uses the facts and impairs the operation of 11 U.S.C. § 522(c) by suggesting that as long as there is a bankruptcy case being administered, any expiration of a time-limited exemption in certain cash proceeds, or the conversion of an exempt asset into a nonexempt asset during the life of the bankruptcy case, makes that cash or asset the property of the bankruptcy estate.   Judge Bohm's wrongful interpretation would abolish the snapshot rule and create absurd results, Hawk claims.   Hawk insists that the modification of the snapshot rule by *Zibman* and *Frost* was not intended to last through the duration of the bankruptcy case.   When no party in interest objects to a debtor's claimed exemptions, the property is withdrawn from the bankruptcy estate and remains forever exempt from the estate, according to Hawk.   He cites *In re Fonke*, 321 B.R. 199, 205 (S.D. Tex. 2005),[15] in which Bankruptcy Judge Marvin Isgur wrote, "It is well-settled law that the effect

---

[15] This Court observes that *Fonke* addressed the question whether the claim objection deadline is reset when a bankruptcy case is converted from Chapter 13 to Chapter 7 and decided that the deadline does not recommence upon such conversion.   321 B.R. at 201, 208-09.   (Other courts disagree and conclude that the time period to object to claimed exemptions recommences upon conversion.   *See, e.g., In re Campell*, 313 B.R. 313 (BAP 10th Cir. 2004; *In re Wiggins*, 341 B.R. 378 (M.D. Pa. 2006).) In the instant case there was no conversion; the case was filed by Hawk under Chapter 7.

of this self-executing exemption is to remove the property from the
estate and to vest it in the debtor. . . ." *Id., citing inter alia
Owen v. Owen*, 500 U.S. 305, 308 (1991)(when property becomes
exempt, it is "withdrawn from the estate (and hence from the
creditors) for the benefit of the debtor."); and *In re Bell*, 225
F.3d 303 (2d Cir. 2000)(holding that property acquired post-
petition by the debtor, including property that exits the estate
and reinvests in the debtor through the exemption process, does not
enter the estate, but instead remains the separate property of the
debtor under 11 U.S.C. § 541 (listing the property that comprises
the estate)).  Judge Isgur continued, *Fonke*, 321 B.R. at 2015,

> Further, when the property vests in the debtor, § 522(c)
> protects the property from liability during the course of
> the case.  This section states:
>
>> Unless the case is dismissed, property exempted
>> under this section is not liable during or after
>> the case for any debt of the debtor that arose, or
>> that is determined under section 502 of this title
>> as if such debt had arisen, before the commencement
>> of this case . . . .
>
> 11 U.S.C. § 522(c).  Thus, § 522(c) "essentially
> 'immunizes' exempt property against any liability for
> prepetition debts."  *In re Reed*, 184 B.R. 733, 738
> (Bankr. W.D. Tex. 1995)(citations omitted).

Hawk asserts, "The traditional view is once exemptions are
allowed, a Chapter 7 debtor may use that exempt property as he sees
fit."  #4 at p. 13, *citing In re D'Avila*, 498 B.R. 150, 159-60
(Bankr. W.D. Tex. 2013)(holding that in a Chapter 7 case, "once an
exemption has been duly claimed on an actual homestead, the

proceeds that result from the post-petition, post-exemption sale of the homestead are not subject to later recovery by the bankruptcy estate under the Texas Proceeds Rule.")("If a Chapter 7 debtor exempts tools of the trade or family heirlooms, they are removed from the property of the estate, they belong to the debtor, and the debtor can later sell them and use the proceeds as he or she will."); *Lowe v. Yochem (In re Reed)*, 184 B.R. 733, 738 (Bankr. W.D. Tex. 1995)("Nothing in section 522(c) even vaguely suggests that, as a precondition to enjoying the protections of that provision, the debtor must maintain the exempt character of the property. . . . Were the rule otherwise, then estates could be reopened to administer such proceeds at virtually any time, robbing bankruptcy administration of any sort of meaningful finality, and robbing the bankruptcy discharge of its efficacy.").   In other words, once a debtor's exemptions are allowed, removing exempt property from the reach of the Trustee or creditors satisfies the purpose of a debtor's "fresh start" and of § 522(c)("property exempted under this section is not liable during or after the case for any debt of the debtor").[16]

Hawk additionally argues that because the Trustee never

---

[16] Significantly all of the cases on which Hawk relies predate and diverge from the Fifth Circuit's ruling in *Frost*, which is the current law and is binding on this Court.  *See, e.g., In re Montemayor*, 547 B.R. 684, 702-04 (S.D. Tex. 2016). Judge Bohm's post-*Frost* opinion in *Smith,* held that *Frost* applied to Chapter 7 cases on the grounds that *Frost*, like *Smith*, was based on Texas Property § 41.001(c), and not on 11 U.S.C. § 1306.

objected to the exemptions and also proposed abandoning the IRA funds to Hawks, the doctrine of judicial estoppel should bar the Trustee from arguing an inconsistent position six months later, i.e., that the assets, which were validly exempted under Rule 4003, should be brought back into the estate.

Hawk further maintains that Judge Bohm erred in retroactively applying his holding in *Smith,* which applied *Frost* to Chapter 7 cases, to the transactions in the instant suit. *Smith* was issued on August 4, 2014, after Hawk had completely liquidated the NFS Securities IRA. Thus, unfairly, Hawk had no opportunity to know what the law was and to conform his conduct to it. In the instant case Judge Bohm described *Frost* as a "watershed ruling." *Hawk*, 524 B.R. at 717. Hawk contends that because the liquidation of his IRA account was effected in "a good faith understanding of the conventional view of the effect of the allowance of property exemptions, the Bankruptcy Court erred when it retroactively applied the same holding as *Smith* to the present case." #4 at p. 8.

### Appellee's Brief (#6)

Identifying as the threshold question, whether *Frost*, which addressed homestead exemptions, can also extend to IRA exemptions in a Chapter 7 case, the Trustee asserts that, in light of the Fifth Circuit precedent in *Frost*, Judge Bohm's opinion in *Smith*, and a plain reading of the Texas exemption statutes for

-17-

homesteads and IRA, supports Judge Bohm's conclusion that *Frost* applies not only to Chapter 13 cases and exempt homesteads, but to Chapter 7 cases and to IRAs.   Thus the Hawks' withdrawn NFP IRA funds became nonexempt property of the estate when they were not rolled over into another IRA within sixty days.   Furthermore the Trustee contends that Hawk's "antiquated understanding of the 'snapshot rule' . . . was corrected by the Fifth Circuit in *Frost*" and that Hawk's only support for his position is based on cases issued before *Frost* that "are no longer applicable or valid interpretations of the rule."   #6 at p. 2.   The debtor in *Frost* made the same arguments as Hawk does here, and the Fifth Circuit rejected them.   Moreover, in *Zibman*, a Chapter 7 case, the facts were different (the debtor sold his homestead before filing a Chapter 7 case, but also did not reinvest the sales proceeds before the six-month deadline expired during the pendency of the bankruptcy case), but the Fifth Circuit opined in it, too, about the snapshot rule, 268 F.3d at 304:

> [T]he law and facts existing on the date of filing the bankruptcy petition determine the existence of available exemptions, but . . . it is the ***entire*** state law applicable on the filing date that is determinative. Courts cannot apply a juridical airbrush to excise offending images necessarily pictured in the petition-date snapshot.

Thus while the snapshot rule allowed the debtor to claim the homestead proceeds as exempt under the Texas Property Code, that exemption at the same time is governed by the additional state-law

requirement that the proceeds must be reinvested in another homestead within six months or "they are removed from the protection of Texas bankruptcy law and no longer exempt from the estate." *Id.* at 387.  As stated by the Fifth Circuit in *Zibman*, 268 F.3d at 304,

> When a debtor elects to avail himself of the exemptions the state provides, he agrees to take the fat with the lean; he has signed on to the rights . . . but also to the limitations (like the temporal element of the reinvestment feature . . . ) integral in those exemptions as well.  In Texas, the 6-month limitation is inextricably intertwined with the exemption that state has chosen to provide for proceeds from the sale of the homestead.

In *Zibman* the Fifth Circuit ruled that after the debtor "sold his homestead, the essential character of the homestead changed from 'homestead' to proceeds,' placing it under section 41.001(c)'s six month exemption" for purchasing another homestead.  Here with Hawk's withdrawal the exempt IRA changed to Liquidated Funds, placing them under section 41.001(c)'s sixty-day period for "reinvestment" in another IRA account.  In both cases the debtor's failure to reinvest the money within the time period removed the funds from the protection of Texas bankruptcy laws and they are no longer exempt from the bankruptcy estate.  744 F.3d at 387. Moreover the Fifth Circuit found that the legislature's intent behind the exemption law was to protect the homestead, not the proceeds.  *Id.* at 305, *citing In re England*, 975 F.2d 1168, 1174-75 (5th Cir. 1992).  It also clearly rejected the argument that Section

522(c) of the Bankruptcy Code made the allowance of an exemption permanent; instead the Fifth Circuit opined, "a change in the character of the property that eliminates an element required for the exemption voids the exemption [under state law], even if the bankruptcy proceedings have already begun." *Zibman*, 268 F.3d at 388.

Furthermore, because *Frost* is based mainly on *Zibman*, which is a Chapter 7 case, Hawk's argument that *Frost* should be limited to Chapter 13 cases fails.  Thus Judge Bohm held in *Smith*, 514 B.R. at 839, that *Frost* applies to Chapter 7 cases.

In *Smith*, Judge Bohm also held that as long as the bankruptcy case remains open and its assets have not been abandoned to the debtor under 11 U.S.C. § 554(c), the Chapter 7 trustee is entitled to recover and liquidate all non-exempt assets.  514 B.R. at 850-51.  The critical date is the closing of the bankruptcy case, not the deadline to file objections to exemptions or the filing of a report of no distribution by the Trustee.  Thus an asset exempt on the filing of the petition may become non-exempt under state law in a Chapter 7 case and become property of the estate despite the passage of the deadline to file objections.

Appellant's arguments for treating exemptions differently in Chapter 7 and Chapter 13 cases are based on pre-*Frost* decisions. Hawk's "traditional view" of exemptions is the pre-*Frost* interpretation of the snapshot rule that is no longer valid,

insists the Trustee.

In sum, the IRA's Liquidated Funds lost their exempt status under Texas law on the 61st day after withdrawal because they were not rolled over into another exempt IRA account.

As for Hawk's charge that Judge Bohm erred by retroactively applying *Smith* to this case, Hawk cited as authority *Villarreal v. Showalter (In re Villarreal)*, 413 B.R. 633, 640 (Bankr. S.D. Tex. 2009) and *Landgraf v. USI Film Products*, 511 U.S. 244, 265 (1997)), both of which are inapposite:  *Landgraf* is inapposite because it discusses the retroactivity of **legislation**,[17] not of judicial opinions, and there has been no change in the Texas exemption statute; *Villarreal* holds that one bankruptcy judge in a district is not bound by the decisions of another in the same district, a point of law with no application in this case of first impression.

In sum, argues the Trustee, Hawk has not provided any valid reason to restrict *Frost* either to solely Chapter 13 cases or to homestead exemptions.  She maintains that Judge Bohm correctly

---

[17] *See Landgraf*, 511 U.S. at 265, from which Hawk drew his words ("[T]he presumption against retroactive legislation is deeply rooted in our jurisprudence . . . . Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted.  For that reason, the 'principle that legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timely and universal appeal.'"), *quoting Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827, 855 (1990)(Scalia, J., concurring).

interpreted and applied *Frost* to this Chapter 7 case and to the IRA funds.

### Appellant's Reply Brief (#7)

Hawk raises two arguments in his reply brief.  First, he argues that applying *Frost* to Chapter 7 cases after the deadline for objections to exemptions that are not contested (and thus the property is withdrawn from the bankruptcy estate) would render superfluous § 522(c)("property exempted under this section is not liable during or after the case for any debt of the debtor  that arose . . . before the commencement of the case" and providing limited exceptions).  Hawk contends that Judge Bohm's conclusion that the Hawks cannot sell the exempt property after it is no longer part of the bankruptcy estate turns on end § 522.  Holding that exempted property reverts to the estate, even after the deadline for objection to exemptions and the vesting of such property with the Hawks if the Liquidated Funds of the IRA are not rolled over into another exempt account is contrary to the statute's content that "property exempted under this section is not liable during or after the case for any debt of the debtor. . . ."

This Court finds Hawk's first challenge meritless because it ignores the fact that he had a choice and elected to proceed under Texas state bankruptcy law pursuant to § 522(b)(2), not federal law.  *In re Camp*, 631 F.3d  at 759; *In re Jarboe*, 365 B.R. at 720.  As Judge Bohm clearly articulated, the Fifth Circuit emphasized in

-22-

*Frost* that when the Debtor elects the state law exemption, "'it is the *entire* state law applicable on the filing date that is determinative.'" *Frost*, 744 F.3d at 385, *quoting Zibman*, 268 F.2d at 304.   While federal law permanently exempts the homestead from the bankruptcy estate, in contrast Texas Property Code § 41.001(c) exempts proceeds from a sale of a homestead for only six months after the sale.   *Id.* at 386-87.   Thus "'a change in the character of the property that eliminates an element required for the exemption voids the exemption, even if the bankruptcy proceedings have already begun.'[18]" *Hawk*, 524 B.R. at 711-12, *citing Frost*, 744 F.3d at 388.   Moreover, Judge Bohm further noted regarding *Frost* that construing federal bankruptcy law to exempt permanently the proceeds would be contrary to Texas Law and Fifth Circuit precedent since "'the object of the proceeds exemption statute was *solely* to allow the claimant to invest the proceeds in another homestead, not to protect the proceeds, in and of themselves . . . .'" *Id.* at 712, *citing id.* at 388 (emphasis in the original).

Hawk's second argument is that Judge Bohm incorrectly applied the snapshot rule for time-limited exemptions in both Hawk's case and in *Smith*.   The bankruptcy judge in *Reed*, 184 B.R. at 735, 738, properly held that after exempt property is removed from the estate

---

[18] The Fifth Circuit in *Frost* continued, "Under this court's precedent, (i) the sale of the homestead voided the homestead exemption and (ii) the failure to reinvest the proceeds within six months voided the proceeds exemption, regardless of whether the sale occurred pre- or post-petition." *Id.* at 388.

it is permanently beyond the reach of the Trustee.   This Court
again finds that Hawk ignores the election of Texas state
bankruptcy law and its different result, the 60-day limit under §
42.0021(c) for rolling over the Liquidated Funds into an exempt
account or reversion of the Funds to the bankruptcy estate, from
application of the federal law where once exempted, the property is
permanently exempted.   *Reed* relied on federal law, 22 U.S.C. §
522(c), to conclude that this statute immunized the homestead
transformed into proceeds from liability for prepetition debts
permanently.   184 B.R. at 737-38.

## Court's Determination

The Court is aware that there is no controlling case in the
Fifth Circuit and there are conflicting opinions among the
bankruptcy courts regarding the permanency of exemptions after the
date they are allowed.   *See, e.g.*, the contrast between Judge
Bohm's holdings here and in *Smith* as opposed to those in pre-*Frost
In re D'Avila*, 498 B.R. at 153-54 (the debtor exempted the
homestead on the date of the petition, but not the proceeds, and
therefor the Proceeds Rule "is not necessarily pictured' in the
post-petition snapshot"), and post-*Frost* and -*Smith In re DeBerry*,
Bankr. No. 14-50406-CAG, Adversary No. 15-05054, 2015 WL 6528024,
at *1 (W.D. Oct. 28, 2015)(holding that proceeds from the post-
petition sale of a chapter 7 debtor's homestead within six months
following the date of sale that are not reinvested do not lose the

exempt character[19]).  *But see Romo v. Montemayor (In re Montemayor)*,
547 B.R. 684 (S.D. Tex. March 9, 2016)(discussing various diverse
holdings and concluding that the debtor's failure to reinvest some
of the proceeds in another homestead within the time required by
the Texas statute resulted in those proceeds reverting into the
bankruptcy estate), in accord with Judge Bohm's opinions.

Given the Hawks' election to proceed under Texas state
bankruptcy law, after a *de novo* review the Court finds Judge Bohm's
reasoning and his analogy of the Hawks' IRA account and its
Liquidated Funds under the Texas Property Code § 42.0021 with its
60-day requirement to reinvest the funds to retain their exemption
to a homestead and the proceeds of the homestead's sale under §
41.001(c) to be highly persuasive.  The Fifth Circuit has held that
an "essential element of the exemption must continue in effect even
during the pendency of the bankruptcy."  *In re Frost*, 744 F.3d 384,
387 (5th Cir. 2014)(a chapter 13 case), *quoting Zibman v. Tow (In
re Zibman)*, 268 F.3d 298, 301 (5th Cir. 2001)(a chapter 7 case).
It further held that the debtor has a continuing duty to maintain

---

[19] As pointed out in *Montemayor*, 547 B.R. at 705, the *D'Avila*
court not only distinguished its facts from those in *Zibman* and
*Frost*, but also adopted *D'Avila*'s approach by concluding that
"the debtor exempted the homestead itself on the date of the
petition, not the proceeds, and therefore the Proceeds Rule 'is
not 'necessarily pictured' in the post-petition snapshot.'  As
such, the court held that the homestead proceeds 'were never part
of the Debtor's chapter 7 bankruptcy estate and thus, the Trustee
cannot avoid the purported transfer under § 549.'"  *Id., citing
DeBerry*, 2015 WL 6528024. at *3-4.

the status quo of exempt property during the pendency of the bankruptcy case.  If the Debtor fails to do so, the trustee is entitled to administer assets that were properly claimed exempt as of the petition date.  Here Judge Bohm, relying on *Frost*, found that the funds were removed from an exempt IRA account during the pendency of the bankruptcy estate for living expenses automatically became property of the bankruptcy estate once they lost their exempt status under state law when Hawk failed to meet the state law's 60-day reinvestment requirement.  524 B.R. 706, 710-11 (Bankr. S.D. Tex. 2015)("Once the Liquidated IRA Funds became nonexempt, the Funds automatically became property of the estate and the Chapter 7 Trustee was immediately entitled to them.").

Accordingly the Court

AFFIRMS the Final Judgment of the Bankruptcy Court that $129,895.76 in proceeds withdrawn from Hawk's IRA ($133,434.64 withdrawn from the IRA minus the funds that Hawk has since delivered to the Trustee) is the property of the bankruptcy estate and must be turned over to the Trustee.

**SIGNED** at Houston, Texas, this  29th  day of  August , 2016.



_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE